

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00165-CR

UZOMA AMUNEKE,

                                                        Appellant

 v.

THE STATE OF TEXAS,

                                                        Appellee

**From the 272nd District Court
Brazos County, Texas
Trial Court No. 06-02147-CRF-272**

## MEMORANDUM OPINION

A jury convicted Uzoma Amuneke of aggravated robbery and sentenced him to ten years in prison. In two points of error, Amuneke contends that the evidence is legally and factually insufficient to support his conviction. We affirm.

### FACTUAL BACKGROUND

Amuneke, his brother Obinna, and cousin Udeze decided to visit a friend who owed Amuneke money. At the friend's apartment, Amuneke determined that no one was home and suggested taking something from the apartment. Obinna and Udeze

volunteered and eventually made their way to the apartment. Amuneke remained in the vehicle. At some point, Obinna and Udeze ran toward the vehicle and instructed Amuneke to drive away from the apartment complex. During the drive, Amuneke noticed a machete in the vehicle. Udeze opened a window and disposed of the machete. Amuneke had not previously noticed the machete and did not know that the two men intended to commit robbery with a machete.

Cory Welch and Ashley Simpson were inside the apartment when Obinna and Udeze knocked on the door. Simpson told Welch that the men wanted to conduct a survey. A few questions into the survey, Welch grew uncomfortable. The men suddenly entered the apartment and Udeze held a machete by his side. The men forced Welch and Simpson into a bedroom and locked the door. Obinna remained inside the bedroom and told the women, "We are not here to hurt you." The women struggled with Obinna and managed to escape. As they ran out of the apartment, Welch noticed that the television had been moved. She then realized that the men intended to rob the apartment, not harm Simpson or herself.

Sergeant Brandy Norris testified that, when she arrived at the scene, Welch and Simpson were "visibly upset, visibly shaken," "angry and scared." At some point, Norris spoke to Amuneke on the telephone and he admitted that a machete was used during the robbery. He admitted that the machete was intended to make a point, not to hurt anyone, and had been abandoned. Police never recovered the machete.

## ANALYSIS

In points one and two, Amuneke contends that the evidence is legally and factually insufficient to support aggravated robbery because the State failed to show that the machete is a deadly weapon.[1]

A deadly weapon constitutes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN. CODE ANN. § 1.07 (a)(17)(B) (Vernon Supp. 2009). Several factors aid this determination: (1) the size and shape of the object; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; and (4) any testimony of the object's life-threatening capabilities. *Villarreal v. State*, 255 S.W.3d 205, 209 (Tex. App.—Waco 2008, no pet.).

The indictment alleged that Amuneke "intentionally or knowingly threaten[ed] or place[d] [Simpson and Welch] in fear of imminent bodily injury or death, and…did then and there use or exhibit a deadly weapon, to-wit: a machete, that in the manner of its use and intended use was capable of causing death and serious bodily injury."

Amuneke contends that the State's evidence fails to establish that the machete is a deadly weapon because: (1) no evidence establishes the sharpness or shape of the machete or provides an adequate description of the machete; (2) the machete was never "lifted up or placed at the girls' throat," the machete was not displayed in a "threatening manner," and Udeze, who had the machete, stayed in the living room, while Obinna, who did not have the machete, stayed in the bedroom with the women;

---

[1] At trial, Amuneke moved for a directed verdict on the deadly weapon issue. The trial court denied the motion.

(3) neither woman suffered injuries; and (4) no evidence establishes that the machete was capable of causing serious bodily injury or death or was used in such a manner to show an intent to use the machete to cause serious bodily injury or death.

We first note that the record is not completely devoid of a description of the machete. Welch testified that the machete was three-feet long. Amuneke testified that the machete appeared to be "regular-sized." Norris testified that a machete has a "fairly long blade with a handle on it; sharpened on one side so you can cut down brush or whatever you have. It has a good long blade on it." She could not testify to the length, sharpness, or color of the machete, but testified that a machete can vary in length and sharpness. As to the machete used during the robbery:

> DEFENSE COUNSEL: And you can't testify as to this machete because you haven't seen it; you can't testify as to whether it could inflict bodily injury or death, can you?
> And even if you had seen it, you don't know how sharp it was?
>
> NORRIS: This specific one, no.

However, Norris testified that, sharp or not, a three-foot-long piece of metal with a handle is capable of causing serious bodily injury or death, depending on how it is used.

Additionally, the record contains evidence regarding the machete's manner of intended use and the victims' fear of death or serious bodily injury. Where a weapon is not "aggressively brandished, *i.e.,* where the knife has not been used to wound the victim, held against the victim's neck, or waved in the victim's face," "evidence is sufficient if a knife is capable of causing death or serious bodily injury or if it is

displayed in a manner conveying an express or implied threat that serious bodily injury or death will be inflicted if the desire of the person displaying the knife is not satisfied." *Billey v. State*, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref'd).

Welch testified that she and Simpson were "terrified." Welch thought, "[W]e're going to get raped; we're going to get murdered." She testified that no one swung the machete, but "[t]he presence of the machete was in itself enough for Ashley and myself to be terrified." She described the machete as a "scare tactic," but at the time, she believed that she might be harmed with the machete because "[w]hy else would you come to a door, pose to be somebody that you're not, push us into the door, and then display a machete?" Norris explained that individuals use weapons during crimes to "gain compliance from the victims; to put fear in them so they'll do what they're told to do." In her opinion, this happened on the day of the robbery. In his conversation with Norris, Amuneke admitted that the machete was intended to make a point.

In light of the testimony, the jury could reasonably conclude that the machete was displayed in a manner conveying an "implied threat that serious bodily injury or death will be inflicted if the desire of the person displaying the knife is not satisfied." *Billey*, 895 S.W.2d at 422. Carrying the machete into the apartment was an implied threat of deadly force to gain compliance from Welch and Simpson. The men intended that Welch and Simpson believe that the machete was capable of causing serious bodily injury or death and Welch perceived this intended threat. *See id.* ("Where the victim testifies that he or she was in fear of serious bodily injury or death, a verbal threat by the accused is not required for the fact finder to conclude that threats were actually

made."); *see also Rodriguez v. State*, No. 06-03-00161-CR, 2004 Tex. App. LEXIS 5036, at *14-15 (Tex. App.—Texarkana June 8, 2004, no pet.) (not designated for publication) ("Rodriguez' action in pointing a knife at Johnson was an implied threat of deadly force to stop the efforts to effectuate his capture and an implied threat he would thwart efforts to hinder his getaway." "Rodriguez intended for Johnson to believe that the knife was capable of producing serious bodily injury or death, and the fact-finder was warranted in so concluding.").

The record also contains evidence regarding the machete's life-threatening capabilities. Amuneke admitted that, depending on how the machete is used, it could cause some damage. Welch testified that she feared for her life. Norris testified that a machete is capable of causing death or serious bodily injury. *See Perez v. State*, No. 01-08-00817-CR, 2010 Tex. App. LEXIS 2305, at *10-13 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, pet. ref'd) (not designated for publication) (officer testified that machete was capable of causing serious bodily injury). To establish that the machete was capable of causing death or serious bodily injury, the State was not required to show that the use or intended use of the machete actually caused death or serious bodily injury. *See Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *see also Denham v. State*, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978) (while the infliction of wounds is a factor to consider, "[t]his does not, however, mean that wounds must be inflicted before a knife can be determined to be a deadly weapon").

In summary, viewing all the evidence in the light most favorable to the verdict, the jury could reasonably conclude, beyond a reasonable doubt, that Amuneke

committed the offense of aggravated robbery by using or exhibiting a deadly weapon. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong or manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We overrule points one and two.

The judgment is affirmed.

FELIPE REYNA
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed September 8, 2010
Do not publish
[CR25]